UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT CAWTHON, | |
| Plaintiff, | |
| -v- | |
| LISHUANG, | |
| Defendant. | |

CIVIL ACTION NO. 22 Civ. 7381 (JGLC) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE JESSICA G. L. CLARKE**, United States District Judge:

## I.    INTRODUCTION

Plaintiff Scott Cawthon ("Cawthon") brought this copyright infringement action under the Copyright Act, 17 U.S.C. §§ 106 and 501 (the "Act"), against Defendant Lishuang ("Lishuang"). (See ECF No. 1 (the "Complaint")). Cawthon, who created and owns intellectual property arising from the "Five Nights at Freddy's" ("FNAF") video games and novels, alleges that Lishuang unlawfully sold on Amazon products that infringe Cawthon's copyrights. (Id. ¶¶ 10, 23–26). After Lishuang failed to appear and defend in this action, the Clerk of the Court entered a certificate of default against Lishuang. (ECF No. 19). Before the Court is Cawthon's motion for default judgment (ECF No. 20 (the "Motion")), which the Honorable Jessica G. L. Clarke has referred for a report and recommendation (ECF No. 22).

For the reasons set forth below, the Court respectfully recommends that the Motion be DENIED for lack of personal jurisdiction over Lishuang and that this action be DISMISSED without prejudice.

In the alternative, if Judge Clarke were to find that personal jurisdiction over Lishuang exists, we respectfully recommend that the Motion be GRANTED IN PART and DENIED IN PART as follows:

1.  A default judgment be entered awarding Cawthon:

    a.  $25,000.00 in statutory damages;

    b.  Post-judgment interest pursuant to 28 U.S.C. § 1961;

    c.  $9,603.00 in attorneys' fees; and

    d.  $402.00 in costs.

2.  Cawthon's requests for pre-judgment interest and injunctive relief be DENIED.

## II.    BACKGROUND

### A.  Factual Background

Given Lishuang's default, the court accepts as true all well-pleaded factual allegations in Cawthon's Complaint, except as to damages.  See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)).[1]

Cawthon is the creator, author, and intellectual property owner of the FNAF series of novels and video games, the first of which were released in August 2014 and have since grown to include over twelve games (the "Five Nights Games") that have been purchased by "[m]illions of people worldwide[.]"  (ECF No. 1 ¶¶ 10–12, 14).[2]  The Five Nights Games are available to

---

[1] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.
[2] The Five Nights Games include: Five Nights at Freddy's, Five Nights at Freddy's 2, Five Nights at Freddy's 3, Five Nights at Freddy's 4, FNaF World, Five Nights at Freddy's: Sister Location, Freddy Fazbear's

purchase and download on personal computers, mobile platforms, and video game platforms. (Id. ¶ 13).  Cawthon owns over 200 registered FNAF-related copyrights, including the following character images:

| | |
|---|---|
| Foxy the Pirate (Funtime Version)<br>Copyright Registration No. VAu001243628 | |
| Freddy Fazbear (Funtime Version)<br>Copyright Registration No. VAu001243624 | |
| Baby<br>Copyright Registration No. VAu001243629 | |

---

Pizzeria Simulator, Ultimate Custom Night, Five Nights at Freddy's VR: Help Wanted, Five Nights at Freddy's AR: Special Delivery, Freddy in Space 2, and Five Nights at Freddy's: Security Breach.  (ECF No. 1 ¶ 12).

| | |
|---|---|
| Ballora<br>Copyright Registration No. VAu001243631 |  |
| Bidybab<br>Copyright Registration No. VAu001243627 | |

(Id. ¶¶ 15–16 (the "Copyrights"); see ECF Nos. 1-2 – 1-6).  Cawthon, through his licensing entity, Scottgames, LLC, licenses the FNAF characters, including those appearing in the Copyrights, for use in merchandise products, such as backpacks.  (ECF No. 1 ¶¶ 17, 19).  The Five Nights Games and the FNAF characters "have a high degree of consumer recognition[,]" and products bearing the copyrights have garnered millions of dollars in retail sales.  (Id. ¶¶ 18, 20).

Lishuang, an Amazon seller, has advertised and sold a backpack that displays FNAF characters without authorization or license:

4



(ECF No. 1 ¶¶ 23–26 (the "Infringing Product")).   The Infringing Product, which Lishuang advertised as "Anime Backpack," uses the Copyrights without adding any transformational element.  (Id. ¶¶ 26, 31).  Lishuang, which is not an authorized licensee of Cawthon, advertised using the Copyrights without Cawthon's permission and has not paid Cawthon any royalties or requested permission to use the Copyrights.  (Id. ¶¶ 28–30).

On August 9, 2022, Cawthon submitted to Amazon a complaint pursuant to the Digital Millennium Copyright Act, 17 U.S.C. § 1202 (the "DMCA"), requesting that Amazon remove the Infringing Product from its sales platform.  (ECF No. 1 ¶ 32).  On August 9, 2022, Amazon removed the Infringing Product.   (Id. ¶ 33).   On August 15, 2022, Lishuang filed a counter-notification setting forth Lishuang's contact information, including an email address, mailing address, and phone number.  (Id. ¶ 34; see ECF No. 1-1 (the "Counter-Notice")). In response to the Counter-Notice, Amazon advised Cawthon that it "will allow [the Infringing Product] to be accessible, unless [Cawthon] provide[d] . . . notice that a lawsuit has been filed against [Lishuang] within 10 business days."  (ECF No. 1-1).  On August 18, 2022, Cawthon advised Amazon that the Counter-

5

Notice was "materially deficient and should not have been accepted" because it lacked, inter alia, a statement of consent to U.S. federal district court jurisdiction.  (ECF No. 9-1 at 2).

### B.  Procedural Background

On August 29, 2022, Cawthon filed the Complaint, which asserts a single claim against Lishuang for copyright infringement under sections 106 and 501 of the Act.  (ECF No. 1 ¶¶ 36–48).  Cawthon requests actual damages, or, in the alternative, statutory damages under § 504(c) of the Act, as well injunctive relief, attorneys' fees and costs, and pre- and post-judgment interest.  (Id. at 8–10).

On January 9, 2023, Cawthon moved for permission to serve Lishuang via email. (ECF No. 8 (the "Service Motion")).  On August 2, 2023, Judge Clarke denied the Service Motion with leave to renew, on the grounds that Cawthon "failed to demonstrate that [he] exercised reasonable diligence to discover [Lishuang's] physical address such that [Lishuang] would be exempt from the Hague Convention."  (ECF No. 11 at 2).  On November 2, 2023, Cawthon renewed the Service Motion (ECF No. 14), which Judge Clarke granted.  (ECF No. 15 (the "Service Order")).  On November 9, 2023, Cawthon served the summons, Complaint, and Service Order on Lishuang at the email address provided in the Counter-Notice.  (ECF No. 16).

After Lishuang failed to appear and respond to the Complaint, Cawthon requested a certificate of default, which the Clerk of the Court entered on December 1, 2023.  (ECF Nos. 17–19).  On December 26, 2023, Cawthon filed the Motion.  (ECF No. 20).  On December 26, 2023, Cawthon served the Motion on Lishuang by email.  (ECF No. 21).

On December 28, 2023, after Judge Clarke referred the Motion for a report and recommendation, the Court entered a scheduling order requiring Cawthon to submit proposed

findings of fact and conclusions of law concerning damages by January 26, 2024, to which Lishuang was ordered to respond by February 16, 2024.  (ECF Nos. 22; 23 (the "Scheduling Order")).  Lishuang was warned that the failure to respond or request an in-court hearing would result in the issuance of a report and recommendation on the Motion and damages based on Cawthon's written submissions alone and without a hearing.  (ECF No. 23 at 1–2).  On December 28, 2023 Cawthon served the Scheduling Order on Lishuang by email.  (ECF No. 24).

On January 25, 2024, Cawthon filed proposed findings of facts and conclusions of law. (ECF Nos. 25; 25-1 (the "Damages Submission")).  To date, Lishuang has not appeared in this action, responded to the Complaint or the Motion, or otherwise contacted the Court.

### III.    LEGAL STANDARDS

#### A. Obtaining a Default Judgment

A party seeking a default judgment must follow the two-step procedure set forth in Federal Rule of Civil Procedure 55.  See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186–87 (2d Cir. 2015) (per curiam).  First, under Rule 55(a), where a party has failed to plead or otherwise defend in an action, the Clerk of the Court must enter a certificate of default.  See Fed. R. Civ. P. 55(a).  Second, after entry of the default, if the party still fails to appear or move to set aside the default, the Court may enter a default judgment. See Fed. R. Civ. P. 55(b).  "In evaluating a motion for default judgment, the 'Court must ensure that (1) jurisdictional requirements are satisfied, (2) the plaintiff took all the required procedural steps in moving for default judgment, and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law.'"  Windward Bora LLC v. Ingber, No. 21 Civ. 3308 (KAM) (ARL),

7

2023 WL 6385815, at *2 (E.D.N.Y. Sept. 29, 2023) (quoting Jian Hua Li v. Chang Lung Grp. Inc., No. 16 Civ. 6722 (PK), 2020 WL 1694356, at *4 (E.D.N.Y. Apr. 7, 2020)).

Whether to enter a default judgment lies in the "sound discretion" of the trial court. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). Because a default judgment is an "extreme sanction" that courts are to use as a tool of last resort, Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981) (per curiam), the district court must "carefully balance the concern of expeditiously adjudicating cases, on the one hand, against the responsibility of giving litigants a chance to be heard, on the other." Lopez v. Emerald Staffing, Inc., No. 18 Civ. 2788 (SLC), 2020 WL 915821, at *4 (S.D.N.Y. Feb. 26, 2020).

In considering whether to enter a default judgment, district courts are "guided by the same factors [that] apply to a motion to set aside entry of a default." First Mercury Ins. Co. v. Schnabel Roofing of Long Is., Inc., No. 10 Civ. 4398 (JS) (AKT), 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011). "These factors include: (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense." J & J Sports Prods. Inc. v. 1400 Forest Ave. Rest. Corp., No. 13 Civ. 4299 (FB) (VMS), 2014 WL 4467774, at *4 (E.D.N.Y. Aug. 12, 2014), adopted by, 2014 WL 4467774, at *1 (E.D.N.Y. Sept. 9, 2014) (citing Swarna v. Al-Awadi, 622 F.3d 123, 142 (2d Cir. 2010)); see Enron, 10 F.3d at 96 (noting that "[a]lthough the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment because the concepts of finality and litigation repose are more deeply implicated in the latter action").

8

### B. Determining Liability

A defendant's default is deemed "a concession of all well-pleaded allegations of liability," Rovio Ent., Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), but a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants." Gesualdi v. Quadrozzi Equip. Leasing Corp., 629 F. App'x 111, 113 (2d Cir. 2015) (summary order). Accordingly, "[t]o enter a default judgment, a district court must determine whether—after taking all well-pleaded allegations as true and making reasonable inferences in the plaintiff's favor—the plaintiff's 'allegations establish [the defendant's] liability as a matter of law.'" Henry v. Oluwole, No. 21-2468, 2024 WL 3404958, at *6 (2d Cir. July 15, 2024) (quoting Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)). If the Court finds that the well-pleaded allegations establish liability, the Court then analyzes "whether [p]laintiff has provided adequate support for [his requested] relief." Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). If, however, the Court finds that the complaint fails to state a claim on which relief may be granted, the Court may not award damages, "even if the post-default inquest submissions supply the missing information." Lopez, 2020 WL 915821, at *4.

### C. Determining Damages

Once liability has been established, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Am. Jewish Comm. v. Berman, No. 15 Civ. 5983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016), adopted by, 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016). A plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of damages." Dunn v. Advanced Credit Recovery Inc., No. 11 Civ. 4023 (PAE) (JLC),

9

2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012).  The evidence the plaintiff submits must be admissible.  See Poulos v. City of New York, No. 14 Civ. 3023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), adopted by, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); see also House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("[D]amages must be based on admissible evidence.").  If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the Court need not conduct an evidentiary hearing.  Fustok v. ContiCommodity Servs. Inc., 873 F.2d 38, 40 (2d Cir. 1989); see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (noting that a court may determine appropriate damages based on affidavits and documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment").

## IV.    DISCUSSION

### A. Jurisdiction

For the reasons set forth below, the Court finds that, although subject matter jurisdiction lies over this action, Cawthon has failed to establish a basis for the exercise of personal jurisdiction over Lishuang.

### 1. Subject Matter Jurisdiction

"Prior to entering a default judgment, the Court must ascertain that subject matter jurisdiction exists over [the] plaintiff's claims."  DeVito Verdi, Inc. v. Legal Sea Foods, Inc., No. 21 Civ. 1007 (MKV), 2021 WL 1600088, at *1 (S.D.N.Y. Apr. 23, 2021).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

The Court has federal subject matter jurisdiction over Cawthon's federal copyright claim under 28 U.S.C. § 1331 and 1338(a). Cawthon sues under a federal statute—the Act—that gives rise to the Court's subject matter jurisdiction. (ECF No. 1 ¶¶ 4–5, 36–48).

## 2. Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." Glob. Plantation Inv.—Deep Creek, LLC v. Yin Xia, No. 17 Civ. 4294 (CBA) (ST), 2019 WL 2436278, at *3 (E.D.N.Y. Mar. 1, 2019), adopted in part by 2019 WL 1284811 (E.D.N.Y. Mar. 19, 2019) (adopting recommendation denying default judgment against defendant for lack of personal jurisdiction over defendant but declining to adopt recommendation to dismiss with prejudice). The Second Circuit "has drawn an 'important distinction . . . between appearing and non-appearing parties with respect to defenses of personal jurisdiction.'" Kaplan v. Bank Saderat PLC, 77 F.4th 110, 117 (2d Cir. 2023) (quoting Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 213 (2d Cir. 2010)). While "an appearing defendant that fails to timely assert the defense in its initial motion or pleading waives or forfeits the right to raise it in later stages of litigation, or when seeking relief from the judgment[,] . . . a non-appearing defendant, even with notice of the action, does not forfeit its personal jurisdiction defense." Id.

Accordingly, "when a court is considering whether to enter a default judgment, it may dismiss an action sua sponte for lack of personal jurisdiction." Yao Wu v. BDK DSD, No. 14 Civ. 5402 (CBA), 2015 WL 5664256, at *2 (E.D.N.Y. Aug. 31, 2015). "As '[j]udgments rendered against a defendant over whom a court lacks personal jurisdiction are void and may later be vacated,' judicial economy dictates that a court "assess personal jurisdiction from the outset and thereby

11

avoid rendering a void judgment.'" Glob. Plantation Inv., 2019 WL 2436278, at *3 (quoting Yao Wu, 2015 WL 5664256, at *2).

Cawthon alleges that the Court has personal jurisdiction over Lishuang, a resident of China, "pursuant to 17 U.S.C. § 512(g)(3)(D)" of the DMCA because Lishuang submitted the Counter-Notice. (ECF No. 1 ¶¶ 3, 7). Specifically, Cawthon alleges that the Counter-Notice set forth, "under penalty of perjury," that Lishuang "consented to the jurisdiction of any judicial district in which Amazon can be found[.]" (ECF No. 20 at 4). There is an Amazon fulfillment center located at 7 W. 34th St, New York, NY 1001, and therefore, Cawthon asserts that this Court has jurisdiction over Lishuang. (Id.; see ECF No. 1 ¶¶ 7–9).

Cawthon has not established that this Court has personal jurisdiction over Lishuang. Courts in this Circuit have at times found that a foreign defendant's affirmative consent to jurisdiction in a DMCA counter-notification is sufficient to establish personal jurisdiction. See Cawthon v. Zhousunyijie, No. 22 Civ. 3021 (LJL), 2024 WL 1156073, at *4 (S.D.N.Y. Mar. 18, 2024); Cawthon v. Nguyen, 22 Civ. 7398 (AS) (SLC), 2024 WL 1557301, at *5 (S.D.N.Y. Jan. 23, 2024), adopted by, 2024 WL 1555775 (S.D.N.Y. Apr. 10, 2024); Wright v. Edwards, No. 21 Civ. 6063 (PKC) (RLM), 2022 WL 17820247, at *6 (E.D.N.Y. July 18, 2022); but see Fab Habitat Corp. v. Houselights, LLC, No. 22 Civ. 2986 (ALC), 2023 WL 6385977, at *5 (S.D.N.Y. Sept. 29, 2023) (rejecting argument that a defendant consented to personal jurisdiction in a DMCA counter statement); Reilly v. Plot Com., No. 15 Civ. 5118 (PAE) (BCM), 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016) ("Neither the [] Act nor the DMCA contains its own personal jurisdiction or service provision."), adopted by, 2016 U.S. Dist. LEXIS 160884 (S.D.N.Y. Nov. 21, 2016). For the reasons explained below, here,

12

Cawthon has not established that the Counter-Notice was "effective" under the DMCA such that

Lishuang consented to this Court's jurisdiction.

"To be effective" under the DMCA, a counter-notification must be a written

communication "that includes substantially" several elements, including:

> The subscriber's name, address, and telephone number, and a statement that the subscriber consents to the jurisdiction of Federal District Court for the judicial district in which the address is located, or if the subscriber's address is outside of the United States, for any judicial district in which the service provider may be found, and that the subscriber will accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person.

17 U.S.C. § 512(g)(3)(D) (emphasis added). The Counter-Notice here was not "effective" because

it lacked the requisite statement regarding Lishuang's consent to the jurisdiction of this Court,

and included only Lishuang's name, email address, mailing address, and phone number.

(See ECF No. 1-1). Cawthon in fact recognized and reported this deficiency to Amazon.

(See ECF Nos. 9 at 7–8; 9-1 at 2 (advising Amazon that the Counter-Notice was "materially

deficient and should not have been accepted" for failure to include, inter alia, the jurisdictional

consent statement)). Thus, Cawthon has failed to show that the Counter-Notice was "effective"

in establishing Lishuang's consent to the jurisdiction of this Court.

In addition, Cawthon has not asserted any basis other than the DMCA for personal

jurisdiction over Lishuang, nor can the Court discern one. Even under New York's personal

jurisdiction requirements, "[i]t is, of course, not sufficient that the defendant conducts business

through an interactive third-party website; the question is whether the defendant used the

website to reach into the forum in some meaningful way." Spin Master Ltd. v. 158, 463 F. Supp.

3d 348, 363 (S.D.N.Y. 2020) (denying default judgment as to defendants who allegedly sold

copyright-infringing products through online marketplaces, where the plaintiffs did not allege facts establishing that they sold or shipped the infringing products to New York).  Accordingly, because Cawthon has failed to allege a basis for this Court's personal jurisdiction over Lishuang, the Motion should be DENIED for lack of personal jurisdiction.  Id.; see Yao Wu, 2015 WL 5664256, at *3 (recommending denial of default judgment motion for "the plaintiff's failure to allege a factual basis for [the] Court's personal jurisdiction over [the] defendants").

### B.  Default Judgment

In the alternative, if personal jurisdiction over Lishuang was found to exist, the Court respectfully recommends that that entry of a default judgment, albeit in an amount different from what Cawthon requests, would be warranted.

As noted above, before entering a default judgment, the Court must consider "(1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense." 1400 Forest Ave., 2014 WL 4467774, at *4; see Mason Tenders Dist. Council v. Duce Constr. Corp., No. 02 Civ. 9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (listing three factors).

Here, each factor supports entry of default judgment.  The Court first finds, based on Lishuang's failure to submit any response to the Complaint or the Damages Submission after having been properly served, that the default was willful.  See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that a failure to respond to a complaint and subsequent motion for default judgment "indicate[s] willful conduct").  Second, delaying entry of a default judgment might

14

prejudice Cawthon, "as there are no additional steps available to secure relief in this Court." Bridge Oil Ltd. v. Emerald Reefer Lines, LLC, No. 06 Civ. 14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), adopted by, 2009 U.S. Dist. LEXIS 6074 (S.D.N.Y. Jan. 26, 2009). Third, Lishuang has failed to respond to the Court's order to appear and defend in this action. Thus, because the requirements of Rule 55 are satisfied and the relevant factors weigh in Cawthon's favor, entry of default judgment is warranted.

Because Lishuang's default equates to a concession of "all well-pleaded factual allegations of liability in the [C]omplaint," the question becomes whether Cawthon's allegations, accepted as true, establish liability for his claims. 1400 Forest Ave., 2014 WL 4467774, at *5; see Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) (explaining that "a party's default is deemed to constitute a concession of all well-pleaded allegations of liability," but not "an admission of damages") (quoting Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)).

### C. Liability

In the Complaint, Cawthon alleges a single cause of action for copyright infringement in violation of the Act. (ECF No. 1 ¶¶ 36–48). The Act authorizes a copyright owner to institute a civil action against anyone who violates the owner's exclusive rights by reproducing or distributing copies of the copyrighted work to the public, or preparing derivative works based upon they copyrighted work. See 17 U.S.C. §§ 106, 501.

#### 1. Statute of Limitations

A civil action for copyright infringement must be "'commenced within three years after the claim accrued.'" Psihoyos v. John Wiley & Sons, Inc., 748 F.3d 120, 124 (2d Cir. 2014) (quoting

15

17 U.S.C. § 507(b)).  The Second Circuit follows the "discovery rule," pursuant to which "copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement[.]"  Id. at 124–25.  Thus, "an infringement claim does not 'accrue' until the copyright holder discovers, or with due diligence should have discovered, the infringement[.]"  Id. at 124. "The standard for whether a plaintiff should have discovered the relevant infringement is an objective one."  PK Music Performance, Inc. v. Timberlake, No. 15 Civ. 1215 (VSB), 2018 WL 4759737, at *7 (S.D.N.Y. Sept. 30, 2018); accord Minden Pictures, Inc. v. Complex Media, Inc., No. 22 Civ. 4069 (RA), 2023 WL 2648027, at *2 (S.D.N.Y. Mar. 27, 2023).

Here, the Complaint alleges that, on August 9, 2022, Cawthon requested that Amazon remove the Infringing Product from its platform (ECF No. 1 ¶ 32), giving rise to the inference that Cawthon discovered the infringement as of that date.  Cawthon filed the Complaint on August 29, 2022, well within the three-year statute of limitations.  (See ECF No. 1).  In any event, Lishuang's failure to appear and assert a defense based on the statute of limitations is a waiver of that defense.  See Clement v. United Homes, LLC, No. 10 Civ. 2122 (RRM), 2010 WL 4941489, at *2 (E.D.N.Y. Nov. 30, 2010) (deeming defendant's default to be a waiver of statute of limitations defense).

### 2.  Copyright Infringement Claim

Cawthon alleges that Lishuang's Infringing Product infringes the Copyrights on the FNAF characters in violation of the Act.  (ECF No. 1 ¶¶ 23–31, 36–48).  A claim of copyright infringement requires proof of two elements: "'(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"  Abdin v. CBS Broad., Inc., 971 F.3d 57, 66 (2d Cir. 2020) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).

Under the Act, "the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). "The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." Id. Here, Cawthon registered the Copyrights in 2016 (ECF Nos. 1-2 – 1-6), so they are not entitled to a statutory presumption of validity, but because Lishuang "has adduced no evidence to cast doubt on the validity of these copyright registrations, the Court finds that they suffice as prima facie evidence of a copyright." BMaddox Enters. LLC v. Oskouie, No. 17 Civ. 1889 (RA), 2021 WL 3675072, at *8 (S.D.N.Y. Aug. 18, 2021) ("BMaddox I").

As to the second element, the record establishes that Lishuang copied the Copyrights and incorporated them into the Infringing Product, without Cawthon's authorization. (ECF No. 1 ¶¶ 23–31; see ECF Nos. 1-2 – 1-6). Accordingly, Cawthon has established Lishuang's liability for copyright infringement under the Act as a matter of law. See Malibu Media, LLC v. Greenwood, No. 17 Civ. 1099 (PAE) (SLC), 2019 WL 7580083, at *3 (S.D.N.Y. Dec. 17, 2019) (holding that defendant's default was concession of liability for copyright infringement, which was adequately pled based on allegations of plaintiff's ownership of valid copyrights and defendant's copying without authorization), adopted by, 2020 WL 209140 (S.D.N.Y. Jan. 14, 2020).

### D. Damages

Lishuang's liability for copyright infringement under the Act having been established, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Am. Jewish Comm., 2016 WL 3365313, at *3. Here, Cawthon seeks statutory damages

of $30,000.00, enhanced statutory damages of $150,000.00, attorneys' fees of $20,959.00, and costs in the amount of $417.17.  (ECF Nos. 20-1 at 3–7 ¶¶ 12–13, 21; 25 ¶¶ 28–29).

As an initial matter, the Court finds that a hearing is unnecessary because Cawthon's Damages Submission and the record provide a "sufficient basis from which to evaluate the fairness of" his damages request.  Fustok, 873 F.2d at 40; see McDermott v. NYFireStore.com, Inc., No. 18 Civ. 10853 (AJN) (SLC), 2021 WL 952455, at *3 (S.D.N.Y. Jan. 15, 2021) (finding no hearing necessary where plaintiff requested statutory damages), adopted by, 2021 WL 950507 (S.D.N.Y. Mar. 12, 2021); Craine v. Beyond the W, LLC, No. 19 Civ. 2259 (JMA) (AYS), 2021 WL 930255, at *2 (E.D.N.Y. Mar. 11, 2021) (same); Hirsch v. Sell It Soc., LLC, No. 20 Civ. 153 (LTS) (BCM), 2020 WL 5898816, at *4 (S.D.N.Y. Oct. 5, 2020) (same).

1. **Statutory Damages**

a. **Legal Standard**

"Pursuant to Section 504 of the [] Act, a copyright owner is entitled to recover the actual damages the infringer caused, plus any profits the infringer gained, or statutory damages." Malibu Media, 2019 WL 7580083, at *3 (citing 17 U.S.C. § 504(a)).  A copyright owner who elects to recover statutory damages instead of actual damages may recover damages "of not less than $750 or more than $30,000 as the court considers just."  17 U.S.C. § 504(c)(1).  "Statutory damages are available without proof of plaintiff's actual damages, and are useful in cases where proof of actual damages or profits is insufficient."  EMI April Music Inc. v. 4MM Games, LLC, No. 12 Civ. 2080 (DLC) (JLC), 2014 WL 325933, at *3 (S.D.N.Y. Jan. 13, 2014), adopted by, 2014 WL 1383468 (S.D.N.Y. Apr. 7, 2014).  The Act gives a court "wide discretion" to set the amount of statutory damages.  Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1116

(2d Cir. 1986).  Courts in this Circuit consider the following factors in exercising discretion to set

the amount of statutory damages:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

Myeress v. Elite Travel Grp. USA, No. 18 Civ. 340 (AJN), 2018 WL 5961424, at *3 (S.D.N.Y. Nov. 14,

2018) (quoting Bryant v. Media Right Prods., 603 F.3d 135, 144 (2d Cir. 2010)).  In addition, the

Court is "guided by the calculations of other courts in this Circuit to ensure that [Cawthon]

receives a fair and just recovery."   Serio v. Skijor, USA, Inc., No. 23 Civ. 438 (LJL),

2023 WL 8372894, at *3 (S.D.N.Y. Dec. 4, 2023).

Where the defendant's infringement is willful, the Act gives the court discretion to

increase the award up to $150,000 per work.  See 17 U.S.C. § 504(c)(2).  Where there is evidence

of willfulness, the "court should consider incorporating both a compensatory and punitive

component to discourage further wrongdoing by the defendants and others."  Whitehead v. Mix

Unit, LLC, No. 17 Civ. 9476 (VSB) (JLC), 2019 WL 384446, at *3 (S.D.N.Y. Jan. 31, 2019), adopted

by, 2019 WL 1746007 (S.D.N.Y. Apr. 18, 2019).

### b.  Application

Lishuang's failure to appear and produce discovery in this action renders it difficult for the

Court to evaluate most of the discretionary factors set forth above.  Lishuang's default, as well as

the Counter-Notice (ECF No. 1-1), do provide some evidence of willfulness.  See Cawthon v. Pan

Nuan Nuan, No. 22 Civ. 3019 (DLC), 2023 WL 2758435, at *2 (S.D.N.Y. Apr. 3, 2023) ("Courts in

this district have consistently held that '[c]opyright infringement is deemed willful by virtue of a

defendant's default.'") (quoting Rovio, 97 F. Supp. 3d at 546); Samsonite IP Holdings S.ar.l. v. Shenzhen Liangyiyou E-Com. Co., No. 19 Civ. 2564 (PGG) (DF), 2021 WL 9036273, at *9 (S.D.N.Y. Apr. 27, 2021) (finding defendant's allegedly false counter notice and default to be conduct "that is sufficiently knowing and ongoing to establish [] willfulness"), adopted by, 2023 WL 8805645 (S.D.N.Y. Dec. 20, 2023); Hirsch, 2020 WL 5898816, at *4 (finding that defendant's default was evidence of willfulness).  The remaining factors, however, "either militate against a substantial award or are indeterminable upon the record before the Court."  Hirsch, 2020 WL 5898816, at *4.  As to the second and third factors, Cawthon has neither alleged any amount of Lishuang's profits on the Infringing Product nor any amount of revenue Cawthon lost due to the infringement.  While Cawthon certainly had "the right to elect not to provide evidence of actual damages," the Court is also "free to consider the absence of such evidence in arriving at an award of statutory damages."  Green v. Akonik Label Grp., LLC, No. 19 Civ. 7492 (PGG) (OTW), 2022 WL 2817311, at *4 (S.D.N.Y. July 19, 2022).  Furthermore, "numerous courts have found that an award of the maximum statutory damages is not appropriate where there is no evidence of actual harm to the plaintiff."  Id. at *3 (collecting cases awarding between $750 to $5,000 for single-use copyright infringement).

The fourth factor—the need to deter the infringer and third parties—weighs against a substantial statutory damages award here.  As one court in this District has recognized, "if the need to deter any infringement warranted a statutory damages award for tens of thousands of dollars, Congress would not have permitted awards as low as $750."  Serio, 2023 WL 8372894, at *4.  "Instead, courts have concluded that the need for specific deterrence is particularly acute when the defendant is 'a serial copyright infringer, or . . . continues to infringe copyrights in spite

20

of repeated notices of infringement.'"   Id. (quoting Parsons v. Bong Mines Ent. LLC, No. 19 Civ. 813 (JMA) (AKT), 2021 WL 931506, at *9 (E.D.N.Y. Feb. 18, 2021), adopted by, 2021 WL 930259 (E.D.N.Y. Mar. 11, 2021)); see Bass v. Diversity Inc. Media, No. 19 Civ. 2261 (AJN), 2020 WL 2765093, at *4 (S.D.N.Y. May 28, 2020) (finding that absence of evidence of serial infringement or continued infringement despite repeated notices of infringement weighed against substantial award).  Here, Cawthon has provided no evidence that Lishuang is a serial infringer or continued infringing the Copyrights after receiving Cawthon's notice of infringement.

As to the fifth factor—the infringer's cooperation in providing evidence of the value of the infringing material—Lishuang's "default weighs in favor of a substantial statutory award." Parsons, 2021 WL 931506, at *9 (collecting cases holding that default warranted substantial award).

As to the sixth factor—the conduct and attitude of the parties—while Lishuang's default weights in favor of a larger award, Cawthon's "failure to provide any evidence which might assist the Court in evaluating the appropriateness of the statutory award sought, such as [his] licensing fees history, weighs against a substantial award."  Parsons, 2021 WL 931506, at *10 (collecting cases); see Serio, 2023 WL 8372894, at *5 (finding that "dearth of information" from plaintiff weighed against substantial award); Hirsch, 2020 WL 5898816, at *4 (finding that $30,000 award was not warranted where "Plaintiff's decision to withhold information about the Defendant and his own licensing history has hindered the Court in its assessment of the basis for the requested statutory damages").

The Court's balancing of all six factors demonstrates that awarding the maximum amount of statutory damages of $30,000 plus enhanced statutory damages of $150,000 that Cawthon

21

requests is not warranted here.  Courts in this District have awarded statutory damages in an amount between $1,000 and $5,000 for single-use copyright infringement actions. See Serio, 2023 WL 8372894, at *5 (awarding $1,000 for single non-willful infringement); Green, 2022 WL 2817311, at *3–4 (awarding $1,000 for single infringement with "weak" evidence of willfulness); Hirsch, 2020 WL 5898816, at *5 (awarding $5,000 for single willful infringement where "licensing fee [was] inferred to be de minimis").  Here, Lishuang infringed on the five Copyrights, and while the Counter-Notice reflects some evidence of willfulness, there is no evidence that Lishuang was a serial infringer or continued the infringement after being notified of the infringement.  In addition, Cawthon has not provided evidence of comparable licensing fees for the Copyrights.  Under these circumstances, the Court considers $25,000—i.e., $5,000 for Lishuang's infringement of each of the five Copyrights—to be a "just" statutory damages award on the record Cawthon has provided.  17 U.S.C. § 504(c)(1).

### 2. Interest and Injunctive Relief

In the Complaint, Cawthon requests pre- and post-judgment interest, as well as various forms of injunctive relief.  (ECF No. 1 at 8–10).  Cawthon repeated these requests in the Motion but did not provide any analysis or legal support.  (ECF No. 20 at 16–17).  The Damages Submission does not address these requests.  (See ECF No. 25).

### a. Pre-judgment interest

"[T]he [] Act neither allows nor prohibits an award of prejudgment interest, and the issue of the permissibility of prejudgment interest is unresolved in this Circuit."  Tetra Images, LLC v. Grahall Partners, LLC, No. 19 Civ. 5250 (PMH), 2021 WL 2809566, at *6 (S.D.N.Y. July 6, 2021) (quoting Capitol Recs., Inc. v. MP3tunes, LLC, No. 07 Civ. 9931 (WHP), 2015 WL 13684546, at *4

22

(S.D.N.Y. Apr. 3, 2015)). "District courts thus have the discretion to award or not award prejudgment interest in copyright cases and cases where other federal law is similarly neutral." Joe Brands LLC v. Edcmaker, No. 21 Civ. 5278 (LLS) (RWL), 2023 WL 8591613, at *4 (S.D.N.Y. Nov. 28, 2023), adopted by, 2023 WL 8763450 (S.D.N.Y. Dec. 19, 2023).

Here, "[a]s the authority to grant prejudgment interest is not clear"—and Cawthon did not elaborate on this issue in his Motion or Damages Submission—"the Court is not inclined to grant that relief." Tetra, 2021 WL 2809566, at *6; see Stokes v. MilkChocolateNYC LLC, No. 22 Civ. 6786 (PAE) (RWL), 2023 WL 4447073, at *12 (S.D.N.Y. June 20, 2023) (recommending denial of pre-judgment interest on copyright infringement claims), adopted by, 2023 WL 4447073 (S.D.N.Y. July 11, 2023). Accordingly, the Court respectfully recommends that no pre-judgment interest be awarded.

### b. Post-judgment interest

The applicable federal statute provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . calculated from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961. The Second Circuit has explained that an award of post-judgment interest is mandatory. See Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008). Given the mandatory nature of post-judgment interest, the Court respectfully recommends that Cawthon be awarded post-judgment interest in an amount consistent with 28 U.S.C. § 1961.

### c. Injunctive relief

"Because [Cawthon] does not request injunctive relief in his inquest briefing, it is unnecessary to analyze whether it is appropriate to recommend an injunction against [Lishuang]." Sadowski v. Primera Plana NY, Inc., No. 18 Civ. 10072 (GBD) (OTW), 2019 WL 8362165, at *1 n.1 (S.D.N.Y. Oct. 16, 2019), adopted by, 2021 WL 5910407 (S.D.N.Y. Dec. 14, 2021). (See ECF No. 25). "Regardless, [Cawthon] has submitted no evidence to support any form of injunctive relief." Sadowski, 2019 WL 8362165, at *1 n.1 (citing Lane Crawford LLC v. Kelex Trading (CA) Inc., No. 12 Civ. 9190 (GBD) (AJP), 2013 WL 6481354, at *12 (S.D.N.Y. Dec. 3, 2013) (recommending denial of permanent injunction following default judgment where the plaintiff "fail[ed] to provide any briefing or case law to support the imposition of . . . equitable relief" in its inquest briefing), adopted by, 2014 WL 1338065 (S.D.N.Y. Apr. 3, 2014)).

Accordingly, the Court respectfully recommends that Cawthon's request for injunctive relief be DENIED.

### 3. Attorneys' Fees

Cawthon seeks attorneys' fees in the amount of $20,959.00, or, alternatively, the discounted amount of $18,751.87, for 43.1 hours of attorney and paralegal time. (ECF No. 20-1 at 4 ¶ 19; see ECF No. 25-1). In support of his request, he has submitted contemporaneous time records, which are important to assist the Court in evaluating the reasonableness of the fees. See Morozov v. ICOBOX Hub Inc., No. 18 Civ. 3421 (GBD) (SLC), 2020 WL 5665639, at *8 (S.D.N.Y. May 5, 2020) (explaining that "a fee application should be supported by 'contemporaneous time records' relaying the rates charged and the hours worked by each

attorney") (quoting N.Y. State Ass'n for Retarded Child., Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983)).[3]

### a. Legal Standard

"A court may award reasonable attorneys' fees and costs to a prevailing party under the [] Act." McDermott, 2021 WL 952455, at *3 (citing 17 U.S.C. § 505); see Malibu Media, 2019 WL 7580083, at *4. An award of attorneys' fees in a copyright action is "not automatic," but rather "'a matter of the court's discretion.'" Lucerne Textiles, Inc. v. H.C.T. Textiles Co., No. 12 Civ. 5456 (KMW) (AJP), 2013 WL 174226, at *4 (S.D.N.Y. Jan. 17, 2013) (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994)), adopted by, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013).

In analyzing whether to award attorneys' fees under the Act, courts consider several factors, including "(1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." Bryant, 603 F.3d at 144 (citing Fogerty, 510 U.S. at 534 n.19). The Court must give "substantial weight" to the third factor, objective unreasonableness. Id. (citing Matthew Bender & Co. v. W. Publ'g Co., 240 F.3d 116, 122 (2d Cir. 2001)).

In calculating a reasonable award of attorneys' fees, the Court must determine the "presumptively reasonable fee" by looking to "what a reasonable, paying client would be willing to pay[.]" Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183–84 (2d Cir. 2008); see Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably

---

[3] Although Cawthon did provide billing records (see ECF Nos. 20-1 at 32–40; 25-1), he failed to comply with the Court's directive to provide a tabulation of the timekeepers' total hours (ECF No. 23 at 1, 3), so the calculation of hours is the Court's own.

expended on the litigation multiplied by a reasonable hourly rate."). The Second Circuit has explained that the "'presumptively reasonable fee'" is "the product of a reasonable hourly rate and a reasonable number of hours engaged in litigating the matter." Solano v. Andiamo Cafe Corp., No. 19 Civ. 3264 (SN), 2021 WL 2201372, at *1 (S.D.N.Y. June 1, 2021) (citing Millea v. Metro-North R. Co., 658 F.3d 154, 166 (2d Cir. 2011)). A party requesting an award of attorneys' fees must provide "contemporaneous time records establishing 'for each attorney [for whom fees are sought], the date [on which the work was performed], the hours expended, and the nature of the work done.'" Annuity, Welfare & Apprenticeship Skill Imp. & Safety Funds of Int'l Union of Oper. Engineers, Loc. 15, 15A, 15C, 15D v. Integrated Structures Corp., No. 12 Civ. 436 (LGS) (KNF), 2013 WL 2649644, at *7 (S.D.N.Y. June 13, 2013) (quoting Carey, 711 F.2d at 1154), adopted by, 2013 WL 3684933 (S.D.N.Y. July 12, 2013).

### b. Application

If the Court finds that an entry of default judgment is appropriate, an award of attorneys' fees is warranted to "further serve the goal of deterrence of copyright infringement." See Mockingbird 38, LLC v. Int'l Bus. Times, Inc., No. 21 Civ. 283 (LJL), 2022 WL 154137, at *6 (S.D.N.Y. Jan. 18, 2022). The Court therefore turns to the appropriate amount of the award, using the framework set forth above.

### i. Reasonable hourly rate

To determine whether an hourly rate is reasonable, the Second Circuit has instructed district courts to "apply the prevailing rate within the district for similar services by lawyers of comparable experience and skill." Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 323 (S.D.N.Y. 2014) (citing Gierlinger v. Gleason, 160 F.3d 858, 882

(2d Cir. 1998)).  A court may also adjust the hourly rate to account for case-specific variables such as:

> [i] the time and labor required; [ii] the novelty and difficulty of the questions; [iii] the skill requisite to perform the legal service properly; [iv] the preclusion of employment by the attorney due to acceptance of the case; [v] the customary fee; [vi] whether the fee is fixed or contingent; [vii] time limitations imposed by the client or the circumstances; [viii] the amount involved and the results obtained; [ix] the experience, reputation, and ability of the attorneys; [x] the "undesirability" of the case; [xi] the nature and length of the professional relationship with the client; and [xii] awards in similar cases.

Gamero v. Koodo Sushi Corp., 328 F. Supp. 3d 165, 173 (S.D.N.Y. 2018) (quoting Hensley, 461 U.S. at 430 n.3).  The movant bears the "burden to establish the prevailing market rate."  Sub-Zero, Inc. v. Sub Zero NY Refrig. & Appliances Servs., Inc., No. 13 Civ. 2548 (KMW) (JLC), 2014 WL 1303434, at *8 (S.D.N.Y. Apr. 1, 2014).

Cawthon was represented in this action by the Nissenbaum Law Group (the "Firm"), and attorney Anthony C. Gunst IV submitted a declaration in support of the Motion (ECF No. 20-1 at 1–7 (the "Declaration")) that includes a description of each timekeeper's qualifications and attaches the Firm's billing records.   (ECF No. 20-1 at 32–40 (the "Billing Records")); see ECF Nos. 25 ¶ 31; 25-1).[4]  Four attorneys and four paralegals recorded a total of 43.1 hours to the matter.  (ECF Nos. 20-1 at 32–40; 25-1).

---

[4] The Court notes that the Declaration contains many statements that are inconsistent with the Billing Records, including the following:  (i) the Declaration lists two attorney timekeepers—Gary D. Nissenbaum and Laura J. Magedoff (ECF No. 20-1 at 6 ¶¶ 20(f)–(g))—who did not record any time to the matter (see id. at 32–40; ECF No. 25-1); (ii) the Declaration states that only three paralegals—Kaitlyn Ketterman ("Ketterman"), Nikki Schuldt ("Schuldt"), and Mardelis Campos ("Campos")—recorded time to the matter (ECF No. 20-1 at 6–7 ¶¶ 20(l)–(n)), but the Billing Records reflect that a fourth paralegal, Gabriel David ("David"), also recorded time (see id. at 37, 39; ECF No. 25-1); (iii) the Declaration states that attorney Steven L. Procaccini ("Procaccini") billed Cawthon $335.00 per hour (ECF No. 20-1 at 6 ¶ 20(k)), but he in fact billed $575.00 per hour (see id. at 35; ECF No. 25-1); (iv) the Declaration states that Gunst's billable

The most senior timekeeper—Procaccini, of counsel to the Firm with over 19 years of experience—requests a rate of $575.00.  (ECF Nos. 20-1 at 6 ¶ 20(k); 25-1).  "Courts awarding attorneys' fees in copyright cases have regularly found rates in the range of $400 to $750 for partners to be reasonable."  BMaddox Enters. LLC v. Oskouie, No. 17 Civ. 1889 (RA) (SLC), 2023 WL 1418049, at *4 (S.D.N.Y. Jan. 6, 2023) ("BMaddox II") (collecting cases), adopted by, 2023 WL 1392075 (S.D.N.Y. Jan. 30, 2023); see Hirsch, 2020 WL 5898816, at *5 (finding $425.00 to be reasonable hourly rate for partner in copyright case); Bass, 2020 WL 2765093, at *6 (collecting cases finding reasonable range of $350.00 to $500.00 for partner in copyright case).  Although not a partner in the Firm, Procaccini's experience places him on a level comparable to experienced partners for whom an hourly rate of $500 or more was reasonable in copyright cases.  See, e.g., BMaddox II, 2023 WL 1418049, at *4 (finding $500 reasonable hourly rate for attorneys with more than ten years of copyright experience).  Accordingly, the Court finds that Procaccini's requested rate of $575.00 is reasonable.

"With respect to associates' rates, courts in the Southern District have generally found hourly rates of $200 to $450 to be reasonable in copyright cases."  Latin Am. Music Co. v. Spanish Broad. Sys., Inc., No. 13 Civ. 1526 (RLS), 2020 WL 2848232, at *7 (S.D.N.Y. June 1, 2020) (collecting cases).  Here, two counsel—Gunst, a 2018 law school graduate, and Ryan Fernandez, a 2014 law

---

rate was $335.00 to $365.00 per hour (ECF No. 20-1 at 6 ¶ 20(h), but the Billing Records reflect that he billed at a rate of $575.00 to $605.00 (see id. at 32, 34–40; ECF No. 25-1); (v) the Declaration states that attorney Matthews A. Florez's ("Florez") billable rate was $365.00 to $450.00 (ECF No. 20-1 at 6 ¶ 20(j)), but the Billing Records reflect that Florez billed at a rate of $450.00 to $525.00 per hour (see id. at 32, 34–40; ECF No. 25-1); and (vi) the Declaration states that attorney Ketterman's billable rate was $370.00 (ECF No. 20-1 at 6 ¶ 20(l)), but the Billing Records reflect that Ketterman billed up to $345.00 per hour (see id. at 38–40; ECF No. 25-1).  The Court disregards the incorrect statements in the Declaration and relies on the Billing Records.

school graduate—and one associate—Florez, a 2019 graduate—worked on this matter. (ECF No. 20-1 at 6 ¶¶ 20(h)–(j)).  The Court finds that the requested hourly rates of up to $605.00 for Gunst, $575.00 for Fernandez, and $450.00 to $525.00 for Florez are unreasonably high given their experience and recent awards in copyright actions in this District, and instead respectfully recommends that hourly rates of $400.00 for Gunst and Fernandez and $200.00 for Florez are reasonable.  See Mockingbird, 2022 WL 154137, at *7 (awarding $300.00 hourly rate to senior associate); Latin Am. Music Co., 2020 WL 2848232, at *7 (capping copyright associates' rates at $465.00); Rock v. Enfants Riches Deprimes, LLC, No. 17 Civ. 2618 (ALC), 2020 WL 468904, at *5 (S.D.N.Y. Jan. 29, 2020) (awarding $400.00 hourly rate for associate with five years of copyright experience).

Finally, as to paralegal rates, "judges in the Southern District of New York have generally found hourly rates of $150 to $200 to be reasonable for paralegals in copyright cases." Latin Am. Music Co., 2020 WL 2848232, at *7 (collecting cases).  Here, Cawthon requests hourly rates of $345 for one senior paralegal (Ketterman), and $225 for three junior paralegals (Schuldt, Campos, and David) (see ECF Nos. 20-1 at 6–7 ¶¶ 20(l)–(n); 25-1), which exceed the range typically awarded in this District.  The use of four paralegals for overlapping tasks also indicates a measure of inefficiency, as discussed further below.  Accordingly, the Court respectfully recommends hourly rates of $200 for Ketterman, and $100 for Schuldt, Campos, and David.

### ii.    Hours reasonably expended

To determine the reasonable number of hours required by a case, the critical inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).  Courts must

perform "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994) (per curiam).  "If the Court finds that some of the claimed hours are 'excessive, redundant or otherwise unnecessary,' it may reduce the number of reasonable hours accordingly."  Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc., No. 14 Civ. 6911 (VEC) (JLC), 2016 WL 658310, at *9 (S.D.N.Y. Feb. 17, 2016) (quoting Hensley, 461 U.S. at 434), adopted by, 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016).  The Court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items."  Lunday, 42 F.3d at 134.  An across-the-board percentage reduction is permitted as a "practical means of trimming fat from a fee application."  Carey, 711 F.2d at 1146.

> Cawthon asserts that the 43.1 hours his counsel expended is reasonable because:
>
> the time and labor expended on this case was increased because of the difficulty and novelty of this matter.  Indeed, the difficulty of this case was increased because it involved the Amazon counter-notice process and issues involving email service on an intellectual property located in China.  Indeed, the issue of service on the Defendant (located in China) required motion practice before the Court, legal research, and was implicated by another Southern District case that was on appeal before the Second Circuit court of Appeals.

(ECF No. 20-1 at 5 ¶ 20(a)).  The Court finds, however, that these factors fail to justify the use of eight timekeepers on a matter involving a single instance of alleged infringement of five Copyrights on an easily accessible sales platform, and in which the Defendant failed to appear. While the Firm did move for alternative service, the two memoranda of law in support were less than thirty pages combined.  (ECF Nos. 9; 14-1).  Furthermore, only one telephone court conference has occurred in the action.  (See ECF min. entry Nov. 7, 2022).  Finally, the Court finds at least one entry in the Billing Records, namely for a thirty-minute "[c]onfer[ence] with opposing

counsel re: mediation and settlement" that appears to be for a different matter, given that no opposing counsel has appeared.  (ECF No. 20-1 at 40).  While the Firm also notes that it has already afforded Cawthon an approximately 10.5% discount of $2,207.13 off the invoices (ECF Nos. 20-1 at 4 ¶ 19; 25-1 at 2, 3), the Court nevertheless finds that a modest additional reduction of 10% is warranted to account for "the scope and complexity"—or lack thereof—of this litigation and the billing inefficiencies noted above.  Carey, 711 F.2d at 1146; see BMaddox II, 2023 WL 1418049, at *6 (imposing 20% reduction to account for various billing inefficiencies); Rock, 2020 WL 468904, at *6 (imposing 25% reduction to hours expended where court was "unconvinced" that two attorneys needed to spend as many hours as they did).

Accordingly, applying the 10% reduction to the reduced hourly rates set forth above, the Court respectfully recommends an award of attorneys' fees in the amount of $9,603.00, calculated as follows:

| Timekeeper | Requested Rate | Awarded Rate | Requested Hours | Hours Reduced by 10% | Total |
|---|---|---|---|---|---|
| Procaccini | $575 | $575 | 1.6 | 1.44 | $828.00 |
| Gunst | $575–$605 | $400 | 6 | 5.40 | $2,160.00 |
| Fernandez | $575 | $400 | 3.4 | 3.06 | $1,224.00 |
| Florez | $450–$525 | $200 | 25.8 | 23.22 | $4,644.00 |
| Ketterman | $270–$345 | $200 | 2 | 1.8 | $360.00 |
| Schuldt | $225 | $100 | 2.7 | 2.43 | $243.00 |
| Campos | $225 | $100 | 0.9 | 0.81 | $81.00 |
| David | $225 | $100 | 0.7 | 0.63 | $63.00 |
| **TOTAL** | | | | | **$9,603.00** |

#### c.  Costs

Cawthon seeks reimbursement of costs under 17 U.S.C. § 505.  (ECF No. 1 at 10).  Specifically, Cawthon requests $ 417.17 in costs, comprised of $402.00 for the Complaint filing fee and $15.17 for postage.  (ECF No. 25-1 at 2).  He has not "submit[ted] invoices or receipts to

substantiate the claimed amount[s]." Khotovitskaya v. Shimunov, No. 18 Civ. 7303 (NGG) (CLP), 2021 WL 868781, at *2 (E.D.N.Y. Mar. 9, 2021) (denying costs where party failed to submit documentation substantiating the amounts reflected in attorney billing records); see J&J Sports Prods., Inc. v. Fantasy Bar & Rest. Corp., No. 17 Civ. 5355 (JGK) (DF), 2018 WL 5018065, at *7 (S.D.N.Y. Sept. 20, 2018) (recommending denial of request for costs that lacked documentary support), adopted by, 2018 WL 5016606, at *1 (S.D.N.Y. Oct. 15, 2018). Since no receipt was submitted to substantiate the postage, the Court does not recommend reimbursement for those costs. The Court may, however, take judicial notice of the filing fees reflected on the docket as a support for an award of those costs. See McDermott, 2021 WL 952455, at *6 (doing so in a copyright infringement case); see also Whitehead, 2019 WL 384446, at *6 (taking judicial notice of court filing fee and awarding costs in that amount); BWP Media USA, Inc. v. Uropa Media, Inc., No. 13 Civ. 7871 (JSR) (JCF), 2014 WL 2011775, at *4 (S.D.N.Y. May 16, 2014) (taking judicial notice of filing fee and recommending award of costs in that amount), adopted by, 2014 U.S. Dist. LEXIS 106713 (S.D.N.Y. Aug. 4, 2014). Accordingly, the Court recommends that Cawthon be awarded costs only in the amount of $402.00. (See ECF No. 1).

## V.    CONCLUSION

For the reasons set forth above, we respectfully recommend that the Motion be DENIED for lack of personal jurisdiction and that the action be DISMISSED without prejudice.

In the alternative, if Judge Clarke finds that personal jurisdiction exists over Lishuang, we respectfully recommend that the Motion be GRANTED IN PART and DENIED IN PART as follows:

1. A default judgment be entered awarding Cawthon:

    a. $25,000.00 in statutory damages;

32

    b.  Post-judgment interest pursuant to 28 U.S.C. § 1961;

    c.  $9,603.00 in attorneys' fees; and

    d.  $402.00 in costs.

2.  Cawthon's requests for pre-judgment interest and injunctive relief be DENIED.

Cawthon shall promptly serve a copy of this Report and Recommendation on Lishuang by email (see ECF No. 15), and file proof of service by **July 22, 2024**.

Dated:      New York, New York
           July 19, 2024

                       **SARAH L. CAVE**
                       **United States Magistrate Judge**

\*                              \*                              \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b). Any request for an extension of time for filing objections must be addressed to Judge Clarke.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).